### BLOCK v. ACADEMY BALL ROOM, Inc., et al.

(District Court, S. D. New York. February 20, 1915.)

BANKRUPTCY ☞178—VOIDABLE PREFERENCES—TRANSFERS CONSTITUTING.

An insolvent debtor, against whom a suit for rent was pending, and who was conducting a dancing academy with some good will and some outstanding accounts, furniture, and cash, transferred the lease of the dancing academy to his wife, and later organized a corporation, to which all the assets and property of the business was transferred. The wife and two others under his guidance became incorporators; the bulk of the capital stock being issued to him and transferred to his wife. He had drawn a salary, and both he and his wife received other benefits from the corporation. The wife had from time to time given him various small sums of money realized from keeping boarders, but no account thereof had been kept, and there was no agreement to repay, and no written evidence of any debt, and the debtor had from time to time given her money and contributed to the family support; it apparently taking the efforts of both to make ends meet. The wife knew her husband's general

financial condition, knew of the suit for rent, and that the rights of creditors would be prejudiced by preferring her, and knew that substantially all the assets of the corporation were being transferred to her, and that as a result the corporation was insolvent. *Held,* that the wife obtained a preference, voidable under Bankr. Act July 1, 1898, c. 541, § 60, 30 Stat. 562 (Comp. St. 1913, § 9644), providing that a transfer by an insolvent within four months before the filing of the petition, which will enable one creditor to obtain a greater percentage of his debt than others of the same class, shall be deemed a preference, and that such a transfer, operating as a preference, shall be voidable by the trustee, if the person receiving it has reasonable cause to believe that its enforcement will effect a preference.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 221, 264–274, 283, 284; Dec. Dig. ☞178.]

In Equity. Suit by Goodman Block, as trustee in bankruptcy of George S. Weygant against the Academy Ball Room, Incorporated, and others. Decree for complainant.

Max J. Kohler, of New York City, for plaintiff.

John B. Coyle, of New York City, for defendants Academy Ball Room, Incorporated, and Gertrude S. Weygant.

Milton J. Gordon, of New York City, for defendant George S. Weygant.

HUNT, Circuit Judge. Suit by Goodman Block, as trustee, to set aside a conveyance from George S. Weygant, bankrupt, to his wife and the Academy Ball Room, Incorporated, as preferential, under section 60 of the Bankrupt Law, and fraudulent, because made with intent to hinder, delay, and defraud creditors, under section 70 of the Bankrupt Law and section 35 of the New York Personal Property Act (Consol. Laws, c. 41). Defendants filed separate answers, denying all material allegations.

The defendant George S. Weygant was adjudged a bankrupt on February 25, 1914. On August 2, 1912, the defendant George S. Weygant made a lease with the representatives of the estate of J. N. Lichtenauer, deceased, for certain premises, 148 West Seventy-Ninth street, in New York, the lease to run for three years from October 1, 1912, at an annual rental at the rate of $1,400 per annum. On July 18, 1913, the bankrupt entered into another lease with D. C. Vanderlip for certain premises, 115 West Seventy-Ninth street, in New York. He used the latter premises for a dancing academy. It was carried on in his name, and was controlled by him alone. The lease was to run for one year from October 1, 1913, at a rental of $2,700 per annum. Weygant failed to pay his rent for the premises, 148 West Seventy-Ninth street, for July, August, September, and October, 1913, whereupon suit for the recovery of $466.67 rent was instituted against him about October 17, 1913, by the estate of J. N. Lichtenauer. Summons was served, answer was interposed, and on November 20, 1913, judgment duly rendered in the Municipal Court of the City of New York against Weygant for the sum of $473.91 and costs. Thereafter execution was returned unsatisfied.

Weygant's dancing academy business had some good will, and there were some outstanding accounts, furniture, and some cash. But he became involved in debt, and about October 29, 1913, assigned and transferred the lease of the academy to Gertrude S. Weygant, his wife, and later, about December 10, 1913, caused a corporation, styled the Academy Ball Room, to be organized, and transferred to it all the assets and property of his dancing academy business. The capital stock authorized for the corporation consisted of 200 shares, of $10 par value each. Under the guidance of the bankrupt, his wife and two others became incorporators, with one share each, and were made directors of the company. Weygant himself was elected president and treasurer and manager, and had 193 shares of the capital stock, which he caused to be transferred to his wife. Thereafter Weygant drew a salary, and both he and his wife received certain other benefits, from the corporation. As a matter of fact, on October 17, 1913, Weygant was insolvent, and knew that he was insolvent.

The evidence adduced upon the hearing but adds this case to the not unusual instances of a loyal, hard-working wife doing everything in her power to save her husband from impending business ruin, even going so far as to lend herself to the execution of his purposes to hinder and delay and defeat his creditors. It is very clear that, under the circumstances surrounding him, Weygant, the bankrupt, had no right on October 29, 1913, to convey the lease for the academy to his wife; nor ought he, about December 15, 1913, to have had issued to her the 193 out of 196 shares of the capital stock of the Academy Ball Room. The formation of the corporation was a step in the purposes to hinder creditors. She never paid the rent of the academy. He was in debt; litigation, with no apparent defense, was involving him; the transfers meant divesting himself of substantially all his property and making him insolvent; and yet the scheme was so carried out that it effected, and was intended to effect, a pecuniary benefit to himself and his family.

It is true, I think, that for some time prior to the fall of 1913 Mrs. Weygant had from time to time given to her husband various small sums of money realized from keeping a few boarders; but she says herself that there was no account kept of the amounts so given, and that there was no agreement that he should repay moneys, and no written evidence of any debt—indeed, there is nothing to warrant a ruling whereby she can claim what are really his assets as her own as against creditors who extended credit in the best of faith, relying upon his apparent ownership of assets. Moreover, it appeared that Weygant from time to time gave money to his wife and contributed to the family support, although he does not seem to have been a successful business man. I gather that it took the efforts of both to make ends meet, and that when disaster was at hand the wife was persuaded that she could make a claim for an aggregate of the small sums of money she may throughout several years have given to her husband, and that he seized hold of any possible claim she might have as a creditor as a basis for doing acts under a semblance of regularity, but which would, when done, effectually enable him to prefer her, and defeat collection of

debts due to innocent creditors. Mrs. Weygant knew the circumstances under which the transfers to her were made. She knew that substantially all the assets of the corporation were being transferred to her, and that, as a result of the transfer, the corporation was really insolvent. She knew her husband's general financial condition, and of suit against him for rent, and knew that the rights of his creditors would be prejudiced by preferring her.

Now, when tested under established principles of law, how can a court of equity deny relief to the trustee for the benefit of the creditors of the bankrupt? Citation of cases is unnecessary to point out the true answer: It is found in the simple proposition, reiterated in bankruptcy decisions, that a man, when about to fail, may not prefer one creditor to the exclusion of another, but must be just to all alike. It therefore follows that the transfer to Mrs. Weygant must be set aside as being a preference, voidable under section 60 of the bankrupt statutes.

The decree presently to be made should adjudge the transfer a preferential one and provide for a delivery of the property or its value. But it seems to me to be just that, before fixing the value of the property involved, the parties should have another opportunity to introduce evidence as to what the value really was as of the date of the transfer, and of the true condition at that time. The case will therefore be held open for such proof as may be forthcoming on the point, and also as to the proper form of the decree.

Let further hearing be had on Friday, February 26th.